Diana TAYLOR, etc., et al.

v.

**MARYLAND SCHOOL FOR THE BLIND etc., et al.**

Civ. No. Y–75–1721.

United States District Court, D. Maryland.

Jan. 27, 1976.

Ralph J. Moore, Jr., Bethesda, Md., for plaintiff.

Kenneth C. Lundeen, Baltimore, Md., for defendant.

### MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

This is an action by Diana Taylor, an eighteen-year old, legally blind, multiple handicapped child, and her parents, Mr. and Mrs. Donald Taylor, against the Maryland School for the Blind (hereinafter "School"), Herbert J. Wolfe, the superintendent, and J. Kirk Walter, the principal of the School. The plaintiffs seek declaratory, injunctive and monetary relief from the School's decision to terminate Diana's enrollment at the School. The parties have submitted this case on a stipulation of facts and an oral argument at which an affidavit of Howard Reuben was admitted on behalf of the plaintiffs.

Diana was admitted to the School in the fall of 1973 for the 1973–74 school year and attended for two years, but was not permitted to return for the 1975–76 school year. In December, 1974 the School's staff determined that Diana "does not appear to be benefiting from the educational program" at the School and that "An alternate placement needs to be found." (Stipulation of Facts Exhibit 22). On December 10, 1974, Mrs.

Taylor was informed that Diana's enrollment at the School would be terminated. The Taylors attempted to get the School to reverse its decision, but were unsuccessful, and in July, 1975 Diana was enrolled at the Great Oaks Center, a state run, custodial, residential institution. On September 3, 1975 the plaintiffs instituted an action in this Court seeking relief similar to that which they now seek. However, after the School offered to grant the plaintiffs a hearing before the School's Admission Committee, the plaintiffs agreed to dismiss their suit without prejudice. On September 17, 1975 that hearing was held, and the Admissions Committee ratified the decision to exclude Diana. After an appeal to the Board of Directors of the School, the Board on December 10, 1975 affirmed the previous decision to exclude Diana.

Several legal issues have been presented by this complaint: 1) whether the action of the Maryland School for the Blind is state action to make the School subject to the Fourteenth Amendment and 42 U.S.C. § 1983, and 2) if so, whether Diana has been denied either procedural due process or substantive due process by the action of the School.

It is clear that the decision of the School constitutes state action to bring it within the confines of the Fourteenth Amendment. The School's connection with the State of Maryland is substantial. *See* Stipulations 2, 6, 9, 10 and 11. As plaintiffs point out, to determine state action a court must engage in "sifting facts and weighing circumstances." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45, 50 (1961). The school attempts, improperly, to isolate each individual state involvement, suggesting each alone is not sufficient to support a finding of state action.

The School also argues that "the focal point of a determination of whether the act of a private entity constitutes state action is the extent of involvement of the State in the particular act." This so-called "particular act analysis of state action" has been followed by some courts. *See Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971) (dicta); *Doe v. Bellin Memorial Hospital*, 479 F.2d 756 (7th Cir. 1973). However, *Burton* applied a general involvement analysis of state action, the thrust of which was that substantial general state involvement with a private entity is sufficient for a finding of state action. *See also Simkins v. Moses H. Cone Mem. Hosp.*, 323 F.2d 959 (4th Cir. 1963), *cert. denied*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); *Kerr v. Enoch Pratt Library*, 149 F.2d 212 (4th Cir. 1945). Although the Supreme Court's decision in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), restrictively interpreted *Burton*, it does not lend support to the particular act analysis of state action. *See* 62 Geo.L.J. 1783, 1791 (1974). There is sufficient state involvement with the School to constitute its decision a state action.

Having determined that the School's decision constitutes state action, it is necessary to consider whether or not that action violated the due process clause of the Fourteenth Amendment. The first due process argument is that the plaintiff was denied procedural due process because she was not given a hearing prior to her exclusion and because the post-exclusion hearing was not before an independent hearing officer and that Diana or her parents were not given adequate prior notice of any grounds the School may have had for excluding Diana. Since Diana was given a hearing before the Admissions and Personnel Committee of the School, the claim for a prior hearing has been mooted, a fact conceded by plaintiffs' counsel at oral argument. Plaintiffs' real complaint is that the decision to exclude Diana was arbitrary and capricious and that there was no evidence that her progress was not sufficient in relation to her ability and that she was dismissed for a ground not found in the School's bylaws.

The School argues that the due process clause does not apply to this case

because it was an academic dismissal based on Diana's lack of progress, relying upon *Brookins v. Bonnell*, 362 F.Supp. 379 (E.D.Pa.1973), and *Wright v. Texas Southern University*, 392 F.2d 728, 729 (5th Cir. 1968). By admitting Diana into its program, the School has created for 'Diana an entitlement to continue that education, at least until she reaches her twenty-first birthday, or until termination for proper cause. *Cf. Maryland Association for Retarded Children v. State of Maryland*, Balto.Co.Cir.Ct., Equity No. 77676 (May 3, 1974) (The Raine Decree). The School cannot exclude Diana from its program without complying with due process. *See also Mills v. Board of Education of District of Columbia*, 348 F.Supp. 866 (D.D.C.1972); *Pennsylvania Association for Retarded Children v. Commonwealth of Penn.*, 343 F.Supp. 279 (E.D.Pa.1972) (three-judge court).

*Mills* and *PARC* can be distinguished in that both cases involved the exclusion of retarded children from a publicly supported education. Further in *PARC*, the parties had settled their differences and the court, to approve the settlement, only had to find that the plaintiffs had stated a colorable claim for denial of due process. Also in *PARC* the court relied on the stigma that would be attached to one who is removed from a public school for reasons of mental retardation. Nevertheless, these cases, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir.), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), and its progeny, support the application of the due process clause to the facts here. By being excluded from the School, Diana has been forced to enroll in the Great Oaks Center. A forced transfer from an educational institution for the handicapped to a custodial one should be governed by the due process clause. The reasons for Diana's exclusion are not purely academic ones. A finding that Diana was not showing sufficient progress is not equivalent to the giving of a grade in a specific course.

Although Diana was not given a hearing prior to the decision to exclude her or prior to the start of the next school year, she has since been accorded a hearing. At this hearing, through her parents, she was represented by counsel. Her parents were permitted to testify, to present evidence and to produce other witnesses. Their attorney was able to cross-examine the School's witnesses, summarize the documentary evidence and make a closing statement. Due process demands are flexible and the type of hearing to be given depends on the circumstances of each case. Here, plaintiffs were given a full and fair hearing that satisfied the requirements of due process. Plaintiffs' counsel conceded this point at oral argument. Plaintiffs also alleged in their complaint that Diana was denied a fair hearing because the hearing was not held before an independent hearing examiner. However, the hearing was held before the Admissions Committee of the School, none of whom had been involved in the original decision to exclude Diana. The hearing was unquestionably a fair one and complied with due process requirements.

The plaintiffs' second contention is that Diana was excluded on the ground that she needs custodial rather than educational services and that this is not one of the grounds for which a student may be excluded as set forth in the School's bylaws. Thus, it is argued, the School has not complied with the holding in *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403, 1418 (1957), that an agency must comply with its own regulations. However, there is no basis in fact for saying that the School based its decision on grounds other than those stated in the bylaws. The letter to the Taylors, expressing the opinion of the Committee (Stipulation Exhibit 47), does not state that they found that Diana had not sufficiently progressed in relation to her ability. Their conclusion is that the staff decision "was appropriate and should remain in effect." The staff decision was based on

Diana's lack of progress (Stipulation Exhibits 22, 23, 27, 28). The letter does state that the School is not a "custodial" institution, but this does not support the conclusion that Diana was excluded on the ground that she needs "custodial" rather than "educational" services. The Board of Directors reviewed this decision of the Committee and, in affirming that decision, found that Diana made no real progress while a student at the School and in view of that the School was not precluded from terminating her because no one can determine what her actual level of ability is. Clearly the School based its decision on lack of progress rather than on a ground not set forth in the School's bylaws.

■■■ Plaintiffs' other contention is that Diana was denied substantive due process because there was no evidence that she had not sufficiently progressed in relation to her ability. Plaintiffs' point is that no one can measure her level of ability so that it cannot be said that she has not progressed in relation to that ability. The Board of Directors apparently admits that Diana's level of ability cannot be measured. *See* Exhibit 52 to First Supplement to Stipulations of Fact.

This Court's scope of review of the School's finding that Diana has not made any progress is a narrow one. The Supreme Court has stated recently:

> Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, [401 U.S. 402 at 416, 91 S.Ct. 814 at 823, 28 L.Ed.2d 136 at 153 (1971)].

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 445, 42 L.Ed.2d 447, 455 (1974). In reviewing the expulsion of three medical students by a university, it was said that the due process clause requires no more than that the decision be supported by some evidence rather than substantial evidence. *See McDonald v. Board of Trustees of the University of Illinois*, 375 F.Supp. 95 (N.D.Ill.), *aff'd*, 503 F.2d 105 (7th Cir. 1974), adopting the opinion of the District Court. This is the standard of review requested by the School. The plaintiffs do not contest this standard, but argue that there is no evidence to support a finding that Diana has not sufficiently progressed in relation to her ability. They argue that Diana's ability cannot be measured and find support for this from statements at the hearing by Mr. Duda, the School psychologist, Mrs. Flynn, the head of the Multiple Handicap Unit at the School, Mrs. Ford, one of Diana's teachers, and Mr. Walter, the principal.

On the other hand, there is evidence that Diana had not progressed during her stay at the School. She was examined by Mr. Duda for a pre-admission evaluation in April, 1973 and he found that Diana was functioning at the two-year level of development. (Exhibit 13). In April, 1975 Mr. Duda again evaluated Diana and found that she was functioning at about the one to one and one-half year level of adaptive development. Mr. Duda's conclusion was that Diana had made no significant progress since her first evaluation. (Exhibit 25). The final report for Diana's first year indicates she had made little progress. (Exhibit 27). Also the second report of the second school year indicates that despite intense work Diana had not moved from the very basic movements to the self-initiated response. There was a staff meeting in December, 1974 to discuss the lack of progress Diana had been making in her second year. (Exhibit 22). And finally, the memo from Mrs. Ford and Diana's houseparents to Mr. Walter

shows that, although there may have been slight changes in Diana's functioning, she had not made any progress. (Exhibit 27). The final staffing report also evidences little, if any, progress in Diana's development. (Exhibit 34).

There is evidence that Diana has made some progress. The letter of Mr. Moore to the Committee on Admissions (Exhibit 46A) summarizes the areas where Diana has made some progress. However, no matter which standard of review this Court chooses to adopt, it cannot say that the finding of the School that Diana has made no real progress while at the School is incorrect. And, since no one can measure Diana's ability, it cannot be said that she has not progressed sufficiently in relation to her ability. The real issue becomes whether the School can dismiss Diana in light of that fact.

The Admissions Policy of the School (Exhibit C to the Complaint) states that if upon a reevaluation of the child's placement in the School, "it is determined that the student is not making sufficient progress in relation to his ability, or if his conduct is such that it has an adverse effect on his fellow students, he may be discharged by the superintendent." The difficulty here is that this policy cannot be applied to Diana because her ability cannot be measured. Although *Service v. Dulles, supra,* stands for the proposition that an agency must follow its own regulations, at times courts permit agencies to make *ad hoc* exceptions to a regulation. *See, e.g., American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547, 553 (1970); 87 Harv.L.Rev. 629 (1974), suggesting that an agency may be justified in violating a regulation by a showing that the party is in fact differently situated than those to whom the regulation is applied or that some greater interest was served by the violation.

A special circumstance in this case—the impossibility of measuring Diana's ability—justifies the School's action. This special circumstance was never given as the reason for the School's failure to abide by its admissions policy and, if the School were a governmental agency, a remand to further explain their decision would be appropriate. *See Brennan v. Giles & Cotting, Inc.,* 504 F.2d 1255, 1264 (4th Cir. 1974); 87 Harv.L.Rev. 629, 655 (1974). However, remanding this case to the School would only prolong the finality of the same decision for it is clear that the reason for the School's deviation from the bylaws is the inability to measure Diana's progress. It was noted at the hearing before the Committee that the admissions policy was formulated before the addition of the multiple handicap unit when a child's ability could be measured. *See* Transcript of Hearing, pp. 192–193. The purpose of this policy was also to permit the School to give individual treatment to each child rather than require a child to progress against a set standard. Diana's case has certainly been given this individual treatment and her exclusion from the School does not amount to a deprivation of due process. The School was justified in not following to the letter its statement in its Admissions Policy.

Accordingly, for the foregoing reasons, it is this day of January, 1976, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiffs' motion for injunctive and declaratory relief be, and the same is, hereby denied; and

2. That judgment be entered in favor of the defendants, all parties to bear their own costs.