Donna EVERETT et al.

v.

Michael MARCASE[1] et al.

James WATSON et al.

v.

Michael MARCASE et al.

Civ. A. Nos. 75–2, 75–459.

United States District Court,
E. D. Pennsylvania,

Jan. 27, 1977.

**1.** These actions, as originally filed, included amongst the named defendants Mathew Costanzo, who at the time held the office of Superintendent of the School District of Philadelphia. Since that time, he has been replaced in office by Michael P. Marcase, and pursuant to Fed.R. Civ.P. 25(d)(1), we incorporate this change.

Ellen Josephson and Stephen F. Gold, Community Legal Services of Philadelphia, Philadelphia, Pa., for Donna Everett.

Steven Goldberg and Janet Stotland, Education Law Center, Inc., Philadelphia, Pa., for James Watson.

Martin Horowitz, Roberta L. Griffin, School Dist. of Philadelphia Bd. of Ed., Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

Within the public school system of the School District of Philadelphia (School District), a pupil may not be suspended from school in excess of five days unless precise "due process" procedures as directed by *Jones v. Gillespie,* 60 Pa.D. & C.2d 576 (C.P., Phila. Co. 1973), are followed. In *Dunmore v. Costanzo,* Civil Action No. 72–43 (E.D. Pa., filed Feb. 13, 1973), a consent decree was entered approving extensive procedures applicable to involuntary transfers of pupils from a nondisciplinary public school to a special disciplinary public school maintained by the School District. Each year within the School District a substantial number of pupils are involuntarily transferred from one nondisciplinary public school to another for disciplinary reasons, but wherein the disciplinary problems are not considered sufficiently serious so as to require transfer to a special disciplinary facility. Where the transfer is for disciplinary reasons, and the pupil is transferred to a nondisciplinary school, such transfers are known within the School District system as "lateral transfers." In the past such lateral transfers have been conducted by the School District on an informal and largely ad hoc basis, without precise internal guidelines.

The present two consolidated class actions[2] were filed primarily to compel the School District to employ more detailed and precise procedures for lateral transfers. The legal basis for these suits is an allegation that the current procedures violate the plaintiff classes' fourteenth amendment rights to procedural due process.

**2.** By order of August 11, 1975, Civil Action Nos. 75–2 and 75–459 were consolidated "for all purposes." On November 28, 1975, an order was filed directing that 75–2 be maintained as a class action on behalf "of those students who have been or will be involuntarily transferred for disciplinary reasons from one public school to another nondisciplinary public school within the School District of Philadelphia." By reason of the earlier consolidation order, the class certification also encompassed 75–459, at least with respect to the lateral transfer issues.

The School District has throughout this litigation taken the legal position that the lateral transfers require no due process procedural protections because the transfer deprives a pupil of no constitutionally cognizable property right and does not amount to punishment. In addition, the School District maintains that, assuming such a property right exists, the methods and practices employed by it in determining whether to transfer a pupil fully comply with all due process requirements of the United States Constitution, as announced by the Supreme Court. In this vein, the School District places heavy reliance upon *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

Commendably, however, for the School District and its solicitor, after many conferences with counsel and the trial judge, the litigants have agreed that certain procedures may be incorporated into a consent decree to be applied to all future involuntary disciplinary transfers to nondisciplinary schools. The agreement was reached after consultation with counsel who represents the Philadelphia Federation of Teachers, Local # 13, AFT, AFL–CIO, who by order of May 19, 1976 was permitted to participate in this litigation for limited purposes. The form of the consent decree presented in Civil Action No. 75–2 is approved and will be entered as a final partial resolution of the issues presented in Civil Action Nos. 75–2 and 75–459.

Unfortunately, the parties have been unable to reach agreement as to certain issues which remain unresolved. They are:

    1. The right of the pupil to be represented by legal counsel.

Mention should be made at this point that the *Watson* action, 75–459, also contemplated serious issues with respect to the School District's maintenance of student records and the procedures availed by it to students and parents to challenge the veracity of the contents thereof. These issues were *not* covered by either the consolidation order or the class certification order, but rather are being addressed separately by the court.

2. Designation of the hearing officer or tribunal and place of hearing.

3. Right of appeal from final decision to transfer.

4. Right of pupils to continue attending school pending final decision on the transfer.

■ Before this court may enter any order beyond that of the consent decree, specifying lateral transfer procedures, a determination must be made that some type of due process procedures are constitutionally required in lateral transfers. I conclude that such transfers involve protected property interests of the pupils and are of sufficient significance as to warrant the shelter of due process protection, and my reasoning follows.

■ In theory a transfer from one school to another within the same school district does not reduce the educational opportunities of the transferred pupil. All schools are intended to be approximately equal as to educational quality and physical facilities offered. Subject to statutory and constitutional limitations, not presently applicable, a school district may assign pupils among its various schools as it deems appropriate, and may for purely administrative purposes, assign pupils from one school to another. There is no inherent right of the pupil to attend the school of his or her choice, or the choice of the parents, within the school district.

An administrative transfer is vastly different from a disciplinary transfer. As shown by the evidence taken during hearings, a transfer during the school year has, at least to many pupils, a serious adverse impact upon their educational progress. The terminology of a "disciplinary" transfer suggests punishment. Even though such transfers may in certain specific instances be for the good of the pupil as well as the transferring school, it nonetheless bears the stigma of punishment. The analogy between a transfer for the good of the pupil and a jail sentence for a convicted felon for "rehabilitation" is not entirely remote.

■ *Goss v. Lopez, supra,* held that where a state establishes a free public school system, a pupil may not be suspended from school even temporarily without some form of procedural due process. In the present cases, the School District has argued that a lateral transfer, even if for disciplinary reasons, unlike a suspension, deprives a pupil of no property right. The evidence presented at the hearings, as well as common knowledge of urban school systems, refutes such argument. A suspension, under *Goss,* "is a serious event in the life of the suspended child." No less so is a disciplinary transfer to another school "a serious event in the life of the [transferred] child." *Goss v. Lopez, supra,* at 576. To transfer a pupil during a school year from a familiar school to a strange and possibly more distant school would be a terrifying experience for many children of normal sensibilities. I think it not melodramatic to suggest the genuine danger of physical harm being intentionally inflicted upon a transferred pupil who may be required to pass through different and strange neighborhoods on the way to and from the transferee school. Any disruption in a primary or secondary education, whether by suspension or involuntary transfer, is a loss of educational benefits and opportunities. Realistically, I think many if not most students would consider a short suspension a less drastic form of punishment than an involuntary transfer, especially if the transferee school was farther from home or had poorer physical or educational facilities.

In *Goss,* the Supreme Court stated:

Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.

419 U.S. at 576, 95 S.Ct. at 737. Substitute the word "interrupted" for "denied" and the words "disciplinary transfers" for "suspension" in the above quote, and the present case appears.

The stipulation for a consent decree most certainly goes a long way toward providing procedurally fair determinations of the need for disciplinary transfers. The consent decree may in some respects provide a greater degree of protection for the pupil than the minimum fourteenth amendment requirements. Fortunately in this litigation, all parties have attempted in good faith to work out procedures that will afford maximum protection to the school children without interfering with possibly conflicting and competing rights of teachers and school administrators, and without disruption of the school system and quality of education. This was accomplished by all parties taking into consideration the extremely complex administrative and financial realities of operating a massive urban public school system.

■ As a federal district judge, I have no authority to order the School District to adopt any procedures beyond those very minimal due process rights applicable and as guaranteed by the fourteenth amendment. Therefore, in those areas where the litigants have been unable to reach agreement, I can do no more than impose the minimum standards, irrespective of whether other solutions might be preferable to all parties.

In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court said:

> Once it is determined that due process applies, the question remains what process is due.

408 U.S. at 481, 92 S.Ct. at 2600, *cited with approval in Goss v. Lopez, supra,* 419 U.S. at 577, 95 S.Ct. 729. Because I consider lateral transfers as detrimental to the pupil's interests as a short term suspension, at least in terms of what might constitute appropriate due process procedures, insofar as practical the guidelines of *Goss* will be adhered to in this decision.

■ Pupils must be given some kind of notice and afforded some kind of hearing. *Goss v. Lopez, supra* at 579, 95 S.Ct. at 738. This the consent decree fully provides. First, there is a notice to the parents by the

school principal with the right for a prompt informal hearing. The "timing and content of the notice and nature of the hearing" appear to be adequate under the proposed consent decree.

■ The first unresolved issue is the right of a pupil to be represented by legal counsel. I find no practical advantage to the pupil and/or his parents having the right to be represented by an attorney at any informal hearing with the principal, nor do I understand plaintiffs' counsel to make this request. On the other hand, there should be no prohibition against a principal permitting, in his discretion, the attendance and advice of counsel at such informal hearing.

Assuming that the formal hearing will be conducted before a fair and impartial hearing officer or tribunal, I do not think it is a necessary ingredient of due process that the pupil and/or his parents have the right to be represented by legal counsel. As stated in *Goss:*

> We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel . . . . .
> To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process.

419 U.S. at 583, 95 S.Ct. at 740. Plaintiffs' counsel contend in their briefs that attorneys may represent pupils at hearings involving transfers to remedial disciplinary schools. However, I find no such express provision in the consent decree entered in *Dunmore v. Costanzo, supra.* Likewise in *Jones v. Gillespie, supra,* no specific mention is made as to the right to counsel. In

the present cases, in practice, attorneys may be permitted to represent pupils and parents, but I do not think such requirement may be mandated by this court.

Under the proposed consent decree, there is an express provision that the parents may bring a representative of their choice to the hearing. This is clearly sufficient to comport with due process. There is no prohibition against such representative being an attorney. It would seem, therefore, that if the parents choose a lawyer to be their representative, the hearing officer would have to recognize such representation, and the representative could not be precluded merely because he or she is a lawyer. Consequently, there would seem to be no practical necessity or advantage in expressly providing that, as a matter of constitutional right, the pupil and/or parents may be represented by legal counsel.

Presumably, plaintiffs' counsel want an express decree as to the right of counsel in order to obtain, at public expense, appointed counsel to represent indigent parents. If so, I consider this request totally unrealistic in view of the serious financial problems of the public school system of Philadelphia. Bearing in mind that the transfer of a pupil from one school to another, whether for disciplinary reasons or otherwise, is primarily an administrative problem for the school administrators who are entitled to broad discretion in such decisions—subject only to affording the pupils to be transferred requisite due process—I cannot conclude that the absolute right to counsel is essential.

The next unresolved area is the designation of the hearing officer and/or hearing tribunal and place of hearing. This poses a difficult problem. The hearing officer, of course, must be fair and impartial. There is a contention by plaintiffs that if the district superintendent's office can control the designation of the hearing officer, there will be too strong a tendency to "rubber stamp" and approve the school principal's recommendation that a lateral transfer be made. There was some evidence presented during the hearings that under the present system, where final determination is made by the district superintendent or someone directly under him, the recommendation of the principal is routinely accepted unless there exist strong countervailing considerations. However, this occurs under the current informal procedure which does not provide for a full due process hearing wherein the pupil and his parents are to be accorded a full opportunity to present their views as to whether a lateral transfer is proper or justified.

The hearing officer should not, of course, be the principal of the school who holds the first informal hearing and recommends the transfer. Likewise, it obviously should not be someone under his direct control or supervision or below him in the "chain of command." However, I see no reason to prohibit a superior of the principal, such as someone from the district superintendent's office, from being designated as the hearing officer. I am mindful that this may not be the best solution. In certain present disciplinary proceedings, the School District has employed an independent hearing officer, which plaintiffs' counsel state would be acceptable. Unfortunately, the School District contends such is impractical because of the large number of transfers which would require employing additional hearing officers. Perhaps upon adoption of the new and more formal procedures, the number of transfer recommendations will be substantially reduced, so as to make the use of an independent hearing officer entirely feasible.

In the recent case of *Hortonville Joint School District No. 1 v. Hortonville Educ. Ass'n.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (U.S.1976), the Supreme Court held that a local school board could properly hear and determine disciplinary actions against teachers of that particular district who had gone on strike in violation of state law. The teachers contended that this was a violation of their rights to due process in that the disciplinary proceedings should have been held by an independent, unbiased decisionmaker. The Supreme Court reversed the decision of the Wisconsin Su-

preme Court which latter court had upheld the teachers' fourteenth amendment contentions. In so doing the Supreme Court also rejected the remedy fashioned by the lower courts of granting the teachers a right of de novo review and hearing before the state trial courts, since state law provided no alternative to the determination being made by the School Board.

Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, [1464], 43 L.Ed.2d 712 (1975); *Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 700–703, 68 S.Ct. 793, [803–804], 92 L.Ed. 1010 (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, [1004], 85 L.Ed. 1429 (1941); see also *FTC v. Cement Institute, supra,* 333 U.S. 701, 68 S.Ct. 803. *Hortonville District, supra* at 493, 96 S.Ct. at 2314.

I conclude as to the hearing officer, that it shall remain the responsibility of the School District to designate a fair and impartial person or group of persons to conduct the hearing and make a determination. It is not for the federal courts to dictate the internal affairs of local governmental agencies. *See Rizzo v. Goode,* 423 U.S. 362, 380, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975). The defendants shall not be precluded from designating the district superintendent or someone under the district superintendent's direct supervision, other than the principal or person recommending the transfer, as the hearing officer.

■ Concerning the unresolved question of any right to appeal a final decision to transfer, there need be granted no right beyond the procedures set forth in the consent decree. This of course does not preclude any party involved from calling upon any appropriate court of competent jurisdiction to decide issues it may properly determine. The consent decree, in effect, calls for an informal hearing after notice, and a later formal hearing. To provide a third-step hearing or right of appeal would not appear to be a requirement of due process. If defendants want to provide some further review or internal right to appeal, either to the School Board or the Superintendent of Schools, it is, of course, free to do so.

■ The final issue is the right of the pupil to continue attending the school from which he or she is proposed to be transferred pending final determination. The School District presently has due process proceedings for suspending a pupil. *Jones v. Gillespie, supra.* Nothing in the proposed consent decree will affect those procedures. Subject, therefore, to the existing rights to suspend a pupil, I can see no threat to the morale of the school by permitting the pupil to continue to attend classes pending a final determination on the transfer. Certainly, such would in many cases be less disruptive than initially transferring the pupil and then having the pupil re-transferred upon final determination by the hearing officer that the pupil should not have been transferred initially.

In addition, it seems probable that in most cases the lateral transfer question will be determined at the informal conference before the principal. If the principal decides to make no recommendation of transfer, that will end the matter. In those situations where a transfer is recommended, many parents may consent to the transfer and waive any right to a hearing. Most likely, a hearing will be required only in those cases where there may be a factual dispute. To require the pupil to transfer to another school or to remain out of school until the facts are finally determined could cause unnecessary harm to the pupil and would be potentially disruptive to the pupil's classroom.

A transfer prior to final hearing, where there exists no emergency situation, would appear to violate the due process prescribed

in *Goss* type suspensions. This is particularly so, since in a true emergency such as potential danger of physical harm to other classmates, suspension procedures remain available. Consequently, no transfer shall become effective until final determination by the hearing officer that the recommendation to transfer be approved.