**CATON RIDGE NURSING HOME, INC., et al.**

v.

**Joseph A. CALIFANO, Jr., et al.**

**Civ. No. Y–77–1536.**

United States District Court, D. Maryland.

March 6, 1978.

Robert J. Thieblot, Baltimore, Md., for plaintiffs.

John W. Sheldon, Asst. U. S. Atty., Louise T. Keelty, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiffs, Caton Ridge Nursing Home, Inc., and Ethel Grabill, a former patient of the Home, have brought this action to enjoin the Maryland State Department of Health and Mental Hygiene (hereinafter DHMH), Neil Solomon, its Secretary, and Joseph Califano, Secretary of the Department of Health, Education and Welfare (hereinafter HEW), from continuing their decertification of Caton Ridge as a provider of Medicaid-supported care. The basis for the complaint is that the plaintiffs have been denied rights secured them by the Fifth and Fourteenth Amendments to the Constitution. Since the amount in controversy seems plainly to be in excess of $10,-000, jurisdiction of the Court lies under 28 U.S.C. § 1331(a).

Plaintiffs' motion for a temporary restraining order was denied on September 16, 1977 on the eve of the termination of the Home's status and the transfer of all the patients to other qualified facilities. All the defendants have now moved to dismiss the complaint and defendant Califano has moved to dismiss a cross-claim filed against him by the DHMH.

The plaintiffs originally requested a preliminary injunction. In their opposition to the motions to dismiss, however, they appear to have abandoned that pursuit and rest on their request for a permanent injunction. (*See* plaintiffs' memorandum in opposition, p. 7.) Accordingly, the Court will not address the particular issues raised by a motion for a preliminary injunction, but rather only those presented in the motions to dismiss.

Title XIX of The Social Security Act (42 U.S.C. § 1396 *et seq.*) establishes a cooperative, jointly funded, federal-state program providing medical services for eligible recipients unable to afford them. Under the statutory scheme, the state agency con-

tracts with nursing homes to provide services to Medicaid recipients. These nursing homes, called providers, must meet certain state standards (Md.Ann.Code, Art. 43 § 556) and are classified according to the type of services rendered. The agreement and state license are prerequisites to federal participation (45 C.F.R. § 249.33(a)(2) and (6); 45 C.F.R. 249.10(b)(15)(i)(e)) which is also contingent upon the home meeting federal standards. (45 C.F.R. § 249.12.)

Caton Ridge has operated as a nursing home since 1952. After Title XIX was enacted in 1965, it was classified as a skilled nursing home serving largely bed-ridden patients. In 1972, however, after Caton Ridge was found in violation of the "Life Safety Code" (essentially a set of fire regulations) it was reclassified as an Intermediate "A" Care facility, serving ambulatory patients. Based, at least in part, on Caton Ridge's stated intention to construct a wholly new replacement building, the DHMH agreed to waive the violations of the Code. Because of several improvements in its fire safety system, the waivers were renewed each year until 1977. Construction of a new facility, however, has never begun.

In January, 1977, because of two continuing violations (overly narrow corridors and stairways), the Division of Licensing and Certification of the defendant, DHMH, notified Caton Ridge that the waivers and its license would be revoked. Pursuant to a request of Caton Ridge, the Division of Licensing and Certification held a revocation hearing on March 31 and April 1, 1977. On August 17, the Division issued a recommendation, affirmed the same day by the Secretary of the DHMH, Neil Solomon, that Caton Ridge be decertified. Payments to Caton Ridge on behalf of the 65 beneficiaries residing there were accordingly terminated on September 17, 1977. Soon thereafter, the patient beneficiaries, including the plaintiff, Ethel Grabill, were transferred to qualified nursing homes.

This latter fact does not appear on the face of the complaint, but in the affidavit of Harold Gordon, submitted along with the

motion of the DHMH and Solomon to dismiss. The reply of plaintiff Grabill does not controvert it. Because these facts are outside the pleadings considered herein, the defendants' motion will be treated as one for summary judgment under Rule 56. *See* Fed.R.Civ.Pro. 12(b).

## MOTIONS OF DHMH AND SOLOMON TO DISMISS THE COMPLAINT

*A. Ethel Grabill*

The state defendants have first moved to dismiss the complaint of Ethel Grabill. In response, Grabill, a medicaid beneficiary and a former resident of Caton Ridge, contends that she had a property interest in remaining at Caton Ridge and could not be forced to transfer by a termination of the Home's provider status without a due process hearing. She argues that as a resident she developed an expectation. that she would remain at Caton Ridge, an expectation which was reinforced by HEW regulations, 45 C.F.R. § 249.12(a)(1)(ii)(B)(4).

■ Under the Fifth and Fourteenth Amendments, the government cannot deprive an individual of a liberty or property interest without a due process hearing. The threshold question is, thus, whether Grabill's transfer from one nursing home to another, without a diminution in benefits, worked a deprivation of property which required a prior hearing.

■ The property interest protected by the due process clauses of these two amendments extend well beyond actual ownership of real estate, chattels, or money and are created by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits . . . ." *Board of Regents v. Roth*, 408 U.S. 564, 571–572, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, the range of interest protected by procedural due process is not infinite. *Board of Regents v. Roth, supra* at 569–570, 92 S.Ct. 2701. A plaintiff must show that governmental action caused her to suffer a "grievous loss" of some kind. *Joint Anti-Fascist Comm. v.*

*McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Accordingly, it is clear that not every inconvenience resulting from state action, whatever an individual's expectation may be, is a deprivation of property cognizable under the due process clauses. *See, e. g., Murray v. West Baton Rouge Parish School Board*, 472 F.2d 438, 443 (5th Cir. 1973).

Plaintiff Grabill cites in support of her position, *Klein v. Mathews*, 430 F.Supp. 1005 (D.N.J.1977). There the court held that certain nursing home patients had a legitimate expectation and entitlement to continued occupancy in a complying facility, and, therefore, a right to a hearing on the issue of the home's compliance. Although the transfer of the patients in the particular circumstances of *Klein* was found to have worked, in effect, a reduction in benefits, the court also concluded that transfer alone triggered the due process clause.

A second federal court, however, came to a different conclusion. In *Nicobatz v. Weinberger*, CCH Medicare and Medicard Guide § 27, 427 at 9827, 9829 (C.D.Cal.1974), the court held that the due process clause did not require a pretransfer hearing for patients for whom benefits would continue at other nursing facilities.

▇ This Court is satisfied that the termination of Caton Ridge's status and the subsequent transfer of Ethel Grabill on 30 days notice with no opportunity for a hearing did not impinge on her rights. The court in *Klein*, in ruling to the contrary, relied on two lines of precedent. The first involved the "traditional property interest analysis" and included *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth, supra,* and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Each of these involved an intentional and actual deprivation imposed on the plaintiff; the loss of a job (*Bishop, Roth, Perry*), a suspension from school (*Goss*),—and not an attempt by the state to benefit the plaintiff. Similarly, the second line of cases, concerning public housing and utilities, all involved a termination of benefits or services. Here the transfer, albeit imposing some risks on the patients, was done to benefit these very patients. Whether the cure of placing them in better and safer homes, is worse than the ailment is not for the Court but for the government agencies and their experts to determine.

Cases involving involuntary transfers in other contexts do not compel a different result. This Court in *Taylor v. Maryland School for the Blind*, 409 F.Supp. 148 (D.Md.1976) required a due process hearing before a student's transfer from an educational institution for the handicapped to a custodial one. Clearly, the transfer there resulted in a drastic change in and diminution of services. Similarly, inapposite is the requirement of a hearing before an involuntary school transfer for disciplinary reasons found in *Everett v. Marcase*, 426 F.Supp. 397 (E.D.Pa.1977). There the court distinguished such a disciplinary transfer from an administrative transfer:

> An administrative transfer is vastly different from a disciplinary transfer. . . . The terminology of a disciplinary transfer may in certain specific instances be for the good of the pupil as well as the transferring school, it nonetheless bears the stigma of punishment.

*Everett v. Marcase, supra* at 400.

In *Bosely v. City of Euclid*, 496 F.2d 193, 196 (6th Cir. 1974), the defendant city decided to redevelop a housing project and was not required to grant the former residents a hearing because "[m]ost importantly, for those low-income residents, housing was found in another municipally owned low-cost housing project." *Cf. Owens v. Housing Authority of City of Stamford*, 394 F.Supp. 1267, 1272 (D.Conn.1975) (housing authority could not unilaterally discontinue a no-eviction policy, "particularly when decent, safe and adequate low-rent housing was not available)."

The court in *Klein* reasoned that a transfer of a nursing home patient is tantamount to a reduction in benefits by comparing the recipient who is not transferred to one that

is. It is equally logical to compare the medicaid recipient who resides in an unsafe home to one who lives in a home in compliance with the Life Safety Code. Viewed in that context, the patient who must transfer to a safe home suffers no grievous loss. Nor, is there any force to the argument that a patient who wishes to remain in a certain home must be moving to a less preferred position (and, thus, is suffering a loss) when transferred involuntarily. Without attempting to dodge the label of paternalism, the Court recognizes that certain individuals, including the elderly, ought to be considered, in part, the responsibility of the state.

A proper implementation of the due process clause calls for a practical, pragmatic analysis. *See Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The burden of providing hearings for each individual patient when a nursing home is decertified would be severe. Such decertifications do not affect single patients, one at a time, but rather whole groups (in this case 65). Moreover, because the alleged deprivation is in the fact of transfer itself, rather than any result of the transfer, a hearing would have to come prior to the transfer, or otherwise be futile.

Where more subjective issues predominate or where the contributions of the patients would be more informative, these complications might properly be ignored. But in the present situation, it is not at all clear what the patients could offer concerning Caton Ridge's compliance with the Life Safety Code. The divergent interests from which a principled judgment ought to result seem to be adequately represented by Caton Ridge and the state agencies. The burden imposed by requiring a hearing for patients would not be commensurate with the potential gains.

*B.   Caton Ridge Nursing Home, Inc.*

The state defendants, the DHMH and its Secretary, Neil Solomon, have also moved to dismiss the complaint of plaintiff Caton Ridge Nursing Home, Inc. Along with their motion, the defendants have sub-

mitted matters outside the pleadings. The Court having decided to treat the motion as one for summary judgment under Rule 56, notified Caton Ridge of this by letter, and gave it a reasonable opportunity to present all material pertinent to such a motion. In the meantime, the defendants themselves moved for summary judgment against Caton Ridge, submitting in support another affidavit.

■ In its complaint, Caton Ridge alleges that the due process hearing accorded it by the DHMH was inadequate in that it was not accorded an impartial judge, a necessary component of due process. *See Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *In re Murchinson,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). However, the mere fact that the hearing officer is an employee of the agency which investigates and brings the action does not *per se* disqualify him.

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). To rule otherwise would place an immense strain on the complex structure of the government. *See Richardson v. Perales,* 402 U.S. 389, 408–410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Therefore, to the extent that Caton Ridge bases its claim solely on the combination of investigative and administrative functions within the DHMH it cannot be successful. Even prior involvement with some aspects of the case would not neces-

sarily disqualify the hearing examiner as an appropriate judge. *Goldberg v. Kelly, supra*, 397 U.S. at 271, 90 S.Ct. 1011. Moreover, to support a claim that the hearing officer was personally biased apart from her position within the agency, the plaintiff must make a substantial showing. *Roberts v. Morton*, 549 F.2d 158 (10th Cir. 1976).

The defendants have filed an affidavit stating that the officer who presided over the Caton Ridge hearing, Elizabeth M. Eckhart, was a state merit system employee assigned to the Office of Hearings and Regulations of the DHMH. That office, although within the same agency, is separate from the Division of Licensing and Certification which moved to revoke Caton Ridge's status. Also Eckhart has stated that the Chief of that division has no control over her promotion, salary, or working conditions. In sum, they have made a strong showing that Eckhart was an impartial judge.

■ The plaintiff, on the other hand, has produced no facts from which a contrary inference could be drawn. It presented with the complaint an affidavit to the effect that several weeks before Eckhart rendered her decision, an employee of the DHMH was aware of the pending revocation. This, however, is not a material fact. The teaching of *Withrow v. Larkin, supra*, is that any determination other employees of the agency may have made does not, without more, reflect bias on the part of the hearing officer. Other than this non-material fact, the plaintiff merely reiterates without particulars its conclusory allegation and suspicion that the hearing officer was biased. A motion for summary judgment calls for more than that. It "pierces the pleadings" and requires the plaintiff to make some minimum factual showing. *See* 10 C. Wright & A. Miller, *Fed.Prac. & Proc.* § 2712.

■ At the same time, the Court is cognizant of the limited role of summary judgment. It should only be granted when both the historic facts and the permissible inferences from them are free from controversy. *Phoenix Savings and Loan v. Aetna Casual-*

*ty & Surety Co.*, 381 F.2d 245, 249 (4th Cir. 1967); *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965). In this case, however, the plaintiff on whom there is a substantial burden for ultimate success, presents no facts from which a reasonable man could infer that the DHMH hearing officer was not impartial. Therefore, summary judgment is appropriate.

## MOTION OF CALIFANO TO DISMISS THE COMPLAINT

■ The defendant, Joseph Califano, Secretary of HEW, has also moved to dismiss the complaint of Ethel Grabill and Caton Ridge. The motion as to Grabill succeeds for the same reasons as the state defendants' motion. It will also be granted, along with the motion as to Caton Ridge, because plaintiffs' argument is solely with the state's decertification and termination of the provider agreement.

Without state certification and licensure, federal participation is unavailable. 45 C.F.R. 249, 10(b)(15)(i)(A). In this case, it was the state agency's revocation of the waivers of the Life Safety Code violations, the provider agreement, and the license which terminated federal participation. The cases of *Klein v. Mathews, supra*, and *Hathaway v. Mathews*, 546 F.2d 227 (7th Cir. 1976), where the federal and not the state agency determined the provider to be in non-compliance, are therefore inapposite. Presumably, should the plaintiff be successful in enjoining the state termination of its status, the federal funds would again be channelled to Caton Ridge. And without such a result, HEW cannot be ordered to resume payments to beneficiaries residing in Caton Ridge. As such, there is no relief which is or can be sought from Califano.

Moreover, in the case of Caton Ridge, the due process clause does not require both a state and a federal hearing on the same issue. It is sufficient that the agency initially moving to disqualify Caton Ridge from participation in the Medicaid program accord it due process.

## CROSS–CLAIM OF DHMH AGAINST CALIFANO

■ The state defendants, DMHM and Neil Solomon, have filed a cross-claim against the federal defendant for money claimed to be due the state for the Caton Ridge beneficiaries between January 27, 1977 and September 19, 1977. The cross defendants have, in turn, moved to dismiss this claim because it exceeds the scope of Rule 13(g). Since the claim is not sufficiently related to the plaintiff's action it will be dismissed.

A defendant may file a cross-claim against a co-defendant if it arises "out of the transaction or occurrence that is the subject matter of the original action or of a counter-claim therein or relating to any property that is the subject matter of the original action." Fed.Rule of Civ.Pro. 13(g). Thus, the issue presented here is whether the state's claim for federal funds covering the period January 27 to September 19, 1977, arises out of the same transaction or occurrence as the action of Caton Ridge and Ethel Grabill to enjoin the discontinuance of Medicaid to Caton Ridge after September 19, 1977.

The precise content of the phrase "same transaction or occurrence" is problematical. Most courts have adopted the logical relationship test—that is, whether the cross-claim involves many of the same factual and legal issues present in the main action—for determining whether a cross-claim is properly assertable. 6 C. Wright & A. Miller, *Fed. Prac. and Proc.*, § 1432 at 171 (1971). Another test inquires whether the same evidence is involved in the main claim and the cross-claim. *See Sue & Sam Mfg. v. B–L–S Constr. Co.*, 538 F.2d 1048 (4th Cir. 1976).

Regardless of the test employed—logical relationship, common questions of law and fact, or similar evidence—the cross-claim here has little if anything to do with the original action and is impermissible. Caton Ridge and Ethel Grabill have sought and are seeking to enjoin the termination of their status effective September 17, 1977. They make no claim for money owed between January and September. Caton Ridge's claim calls for an analysis of its property right in its status as a Medicaid provider and particularly of the hearing accorded it by the state agency. The factual inquiries focus on the impartiality of the DHMH's hearing officer and the legal questions on whether the constitutional requirements of due process were met. Grabill's claim involved an analysis of her property interest in remaining at Caton Ridge. Neither of these actions has a logical relationship with the DHMH's claim that HEW prematurely stopped participating in the Medicaid benefits paid to Caton Ridge. The cross-claim requires an interpretation of the statute and regulations establishing the relationship between the state and federal agencies. The issues, both factual and legal, as well as the evidence relevant to them, are distinct from those in the original action.

At the same time, it is clear that no inconsistent holdings could result from the separation of the cross-claim and the present action. The outcome of this action to define the requirements of due process for the September 17 termination will not hamper the parties in determining the proper funding of the January-September program.

Accordingly, it is this 6th day of March, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That the complaint of Ethel Grabill as to all defendants be, and the same is, hereby DISMISSED;

2. That the complaint of Caton Ridge as to all defendants be, and the same is, hereby DISMISSED; and

3. That the cross-claim of the defendant, the Maryland Department of Health and Mental Hygiene and Neil Solomon be, and the same is, hereby DISMISSED.