**Donald DORNAN, Bruce Harmon, John Bastin,**

v.

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, Edward J. Carlough and Local Union No. 7.**

**Civ. A. No. 86–CV–40127–FL.**

United States District Court, E.D. Michigan, S.D. at Flint.

Nov. 12, 1992.

C. Douglas Lovett, Cleveland, OH, Darrell M. Amlin, Detroit, MI, for plaintiffs.

Donald W. Fisher, Toledo, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

The plaintiff has won a judgment of $194,978.92 in damages. Before the Court remain several motions of both parties relating to the November 1, 1991 Memorandum and Order issued by this Court.[1] This opinion resolves all pending issues:[2]

(1) the appropriateness of and amount of restitutionary set-off to Local 7;

(2) the appropriateness of and amount of pre-judgment interest;

(3) the appropriateness of and amount of post-judgment interest;

(4) the appropriateness of and amount of attorney fees;

(5) the appropriateness of holding an election in Local 7 to decide the outcome of this litigation;

(6) the procedures for administering the fund to plaintiffs, including whether the International should post security.

---

**1.** The November 1, 1991 opinion is attached as an appendix to this opinion. That opinion followed a Sixth Circuit decision on this case, reported at 905 F.2d 909 (6th Cir.1990). The facts have been well described by the Sixth Circuit and do not bear repeating.

**2.** Pursuant to a stipulation by all attorneys, communicated to the Court in a telephone conference with David A. Nacht, Law Clerk, Defendant's jurisdictional challenge to this Court's right to resolve several of the issues in contention has been dismissed.

The Court finds as follows:

(1) The judgment shall be subject to set off for the loss of dues in the first month of the injunction, April, 1988. The recovery for the remaining three months is barred by laches. Only Plaintiffs who worked during April, 1988 and benefitted from the lower dues caused by the injunction will have their judgment set-off.[3]

(2) Pre-judgment interest is awarded at the rate specified in 28 U.S.C. § 1961.

(3) Post-judgment interest is awarded at the rate specified in 28 U.S.C. § 1961 on the amount of the judgment.

(4) Attorney's fees are warranted, but shall be reduced by twenty-five percent to reflect plaintiffs' loss on significant issues.

(5) No election among the local's membership shall decide the outcome of this litigation; that is a matter for the court.

(6) Either Local 7 or the International shall pay the judgment, or plaintiffs may collect the judgment by using the normal procedures provided by law. No security bond shall be awarded. Plaintiff's attorney shall be responsible for administering distribution of the award, and plaintiffs shall bear the costs of distribution, except as specified in the opinion.

## I. *Set-off*

This court previously opined:

Finally, at all times that the injunction operated to reduce the dues rate, the Union held the keys to their cell of financial woes. To avoid the depletion of its treasury, an election consistent with the provisions of the LMRDA could have been held to adopt a valid dues rate.

---

**3.** The following calculation will be performed for each member of the plaintiff's class to determine the plaintiff's recovery:

Plaintiff's recovery = (Judgment per plaintiff + Pre & Post–Judgment Interest) − Adjusted set-off. Adjusted Set-off = Total Losses in Dues to Local 7 Caused by Injunction During April, 1988 × (# of plaintiffs who worked in April, 1988 ÷ total # of April, 1988 workers) ÷ # of plaintiffs who worked in April, 1988. Adjusted set-off = 0 for plaintiffs who did not work in April, 1988. The explanation for this calculation is provided in part I of this opinion.

The Court will not punish the plaintiffs for their union's delay. No amount will be set-off from the plaintiff's class' recovery.

November 1, 1991 Memorandum Opinion and Order, at 4 [Appendix at 864]. The Union argues, however, that the Sixth Circuit opinion in this case made clear that its June 1986 election was consistent with the LMRDA. The Union asks, therefore, that its losses incurred as a result of the injunction be set-off from plaintiffs' judgment. This Court must decide complex legal and analytical issues to determine whether it can award set-off.

A. May a Federal Court Award Restitution to a Party Who Lost Income as A Result of an Injunction Issued By the Court that is Later Determined to be Erroneous?

In *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), the Supreme Court held that an employer in a labor dispute, who obeyed a district court's injunction that was later reversed, could not obtain damages from the union. W.R. Grace had complied with a district court order that *it had sought*, prohibiting layoffs of women and enforcing compliance with an E.E.O.C. conciliation agreement. The result was that the company laid off men with seniority and thereby, according to an arbitrator, violated the collective bargaining agreement with the union. *Id.*, 461 U.S. at 763, 103 S.Ct. at 2182. The district court reversed the arbitrator, finding that public policy prevented enforcement of the collective bargaining agreement. The Fifth Circuit Court of Appeals then reversed the district court, and the Supreme Court affirmed.

While much of the opinion focused on the deference given to arbitrators, the Court also addressed the defense of the Company that the injunction prevented compliance with the collective bargaining agreement. The Court held this defense invalid. As the Court bluntly put it, "Obeying injunctions often is a costly affair [footnote 14]" *Id.*, 461 U.S. at 770, 103 S.Ct. at 2185. Footnote 14 states that "A party injured by the issuance of an injunction later deter-

mined to be erroneous has no action for damages in the absence of a bond." *Id.*, at n. 14, 103 S.Ct. at n. 14.

In the instant case, there was no bond for the injunction. Plaintiff claims quite plausibly that the *W.R. Grace* language prohibits the set-off requested.

However, an examination of the opinion shows that the Court probably did not intend to foreclose equitable remedies to compensate for reversed injunctions as a matter of law. The Court determined that the company had, in essence, bargained with the union to accept responsibility for any losses that might occur as a result of obeying the court order. *Id.*, at 767, 103 S.Ct. at 2184. In addition, by seeking the injunction to protect itself from conflicting contracts that it had made, the company waived any right to seek redress as a result of the injunction:

By entering into the conflicting conciliation agreement, by seeking a court order to excuse it from performing the collective-bargaining agreement, and by subsequently acting on its mistaken interpretation of its contractual obligations, the Company attempted to shift the loss to its male employees, who shared no responsibility for the sex discrimination.... No public policy is violated by holding the Company to those obligations, which bar the Company's attempted reallocation of the burden.

461 U.S. 757 at 770, 103 S.Ct. 2177 at 2186.

The citations provided by the Supreme Court to support its statement in footnote 14 that "A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond" *Id.*, at 770, n. 14, 103 S.Ct. at 2185, n. 14 do not support the position that a party burdened by an erroneous injunction cannot obtain redress. *Russell v. Farley*, 105 U.S. 433, 437, 26 L.Ed. 1060 (1882); *Buddy Systems, Inc. v. Exer–Genie, Inc.*, 545 F.2d 1164, 1167–68 (9th Cir., 1976), cert. denied, 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977). *Buddy Systems* is a case about the status of a bond in a temporary injunction and has no

implications about equitable relief when no bond is required.

*Russell v. Farley,* as reported in the Lawyers' Edition volume, contains a headnote that states:

> The circuit court, where no undertaking has been required on an injunction, has no power to award damages sustained by either party in consequence of the litigation, except by making a decree as to the costs of the suit.

*Id.,* 105 U.S. 433, 26 L.Ed. 1060. However, the case does not stand for the proposition that a court cannot grant restitution for an erroneous injunction. In this case, the circuit court ordered plaintiff to pay the amount of the injunction bond in order for the court to continue the issuance of an injunction prohibiting the transfer of certain iron rails.

In its discussion of the circuit court's decision, the Supreme Court considered several views on injunctions, and it was in this context that it made the statement that provides the basis for the headnote. That statement, like the headnote, only forecloses the possibility of damages without a finding of "the costs of the suit." In its decision, however, the Court *upheld* the circuit court's order as within its discretion, and in doing so, the Court also found that the original injunction was not issued erroneously. 105 U.S at 446–447, 26 L.Ed. at 1065. In short, *Russell* has nothing to say about whether restitution may be ordered for erroneous injunctions.

This Court has discovered other cases addressing the issue at bar more clearly. In *Arkadelphia Co. v. St. Louis S.W. Ry. Co.,* 249 U.S. 134, 145, 39 S.Ct. 237, 63 L.Ed. 517 (1919), the Supreme Court upheld the right of shippers to obtain restitution from railway companies who had obtained an injunction barring the enforcement of an Arkansas regulatory statute. In allowing damages incurred during the period after the injunction had issued, the Court held:

[T]his portion of the claims is allowable against the railway companies themselves upon the principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal *to be restored by his adversary to that which he has lost thereby.* This right, so well founded in equity, has been recognized in the practice of the courts of common law from an early period. *Id.,* 249 U.S. at 145, 39 S.Ct. at 242, 63 L.Ed. at 524.

The Court reaffirmed this position in 1941, when it stated as follows:

"Under long settled equity practice, courts of chancery have discretionary power to assess damages sustained by parties injured because of an injunctive restraint ultimately determined to have been improperly granted. This power is, as stated, discretionary; ..."

*Public Service Comm'n. of Missouri v. Brashear Freight Lines, Inc.,* 312 U.S. 621, 629, 61 S.Ct. 784, 788, 85 L.Ed. 1083, 1088 (1941) (citations omitted).

In *Brashear Freight Lines,* the Supreme Court held that a district court erred by dismissing a request for damages by the Missouri Public Service Commission sustained as a result of a temporary restraining order issued by the court that stayed the enforcement of a Missouri regulatory statute. The court had issued the restraining order at the request of 76 trucking operators who had challenged the constitutionality of the statute. After a three judge district court panel[4] found the law constitutional and dissolved the restraining order, the Commission sought damages before the district court panel, who dismissed the motion. The Supreme Court heard the case on appeal following circuit court affirmance on the grounds that the district court acted within its discretion. The Supreme Court found the District Court panel had abused its discretion by *denying* damages from the injunction under "[t]he cir-

---

**4.** Authorized pursuant to the former § 266 of the Judicial Code, 28 U.S.C. § 380 requiring such a court for a constitutional challenge to state statutes. 28 U.S.C. § 380 has since been repealed.

cumstances of this case." 312 U.S. at 630, 61 S.Ct. at 789.

Recent circuit cases raise doubts in dicta about the ability of a party to seek damages from an improper injunction. However, these statements make no effort to explain why a longstanding rule from equity should be abolished.

*Klein v. Califano*, 586 F.2d 250 (3d Cir. 1978) (en banc) concerned an effort by the federal Department of Health, Education & Welfare (HEW) to recover funds that it had been ordered to pay to a nursing home by a district court's permanent injunction, even though the agency had previously ruled the nursing home to be in non-compliance with Medicaid standards. Later, the district court found that the nursing home was not in compliance and dissolved the injunction. HEW then sought recoupment.

The Third Circuit addressed the issue in the context of a challenge to the lawsuit as moot. The court analogized to preliminary injunction bonds, *see* Fed.R.Civ.P. 65, and held that while the underlying action might be moot, "the prospect of a suit on the bond challenging the propriety of the injunction is sufficient to sustain the life of the appeal and to require the appellate court to review the merits of the preliminary injunction order." *Klein*, 586 F.2d at 256.

The *Klein* court refused to take a clear position on the merits of the claim for recoupment however:

9. While we assume that HEW asserts a colorable claim to recoupment, we pretermit the issue of whether, as a matter of equity, merely by gaining appellate reversal of a permanent injunction the Government in this or other cases may obtain recoupment from recipients who win an injunction enjoining the Government from terminating funding of a federal program. The limits of such a recoupment remedy are novel and are not squarely at issue on the instant record. In general, however, erroneously granted injunctions do not give rise to causes of action for consequential damages suffered by a defendant who complies with an injunction pending appeal. *See*

*Campbell Soup Co. v. Martin*, 202 F.2d 398, 399 n. 1 (3d Cir.1953). *But cf. Arkadelphia.*

*Klein*, 586 F.2d 250, 256–57 n. 9.

In *Campbell Soup*, another case addressing the mootness issue, the court stated in a footnote, "There is no such thing as a cause of action for damages incurred as a result of compliance with an injunction. The only recourse seems to be a suit on a bond given by the party procuring the injunction." 202 F.2d at 399 n. 1.

Given *Brashear Freight* and *Arkadelphia*, this Court finds the *Klein* and *Campbell Soup* footnotes to be incorrect statements of law. Even if they are correct, they are not definitive as to the ability of a defendant to obtain set-off against a judgment for plaintiff. Moreover, this Court does not read *W.R. Grace* as overruling *Brashear Freight* and therefore holds that it may grant a set-off for an improperly issued injunction.

### B. Is a Set–Off Appropriate in this Case?

■ The union claims that it incurred a net capital loss of $225,186.86 and a loss in dues revenue of $500,000 as a result of plaintiffs pursuing the invalid § 101(a)(3)(A) claim and the "invalid orders of this Court." *Reply of Sheet Metal Workers' supra*, at 3. However, only those losses due to the invalid Court injunction require set-off. Therefore, only those losses in dues resulting from the injunction can be considered for set-off.

Other difficulties remain with awarding set-off, however. Since the set-off is an equitable act, laches remains a valid defense. Plaintiffs argue that the Union had the power to avoid the reduced income from this Court's injunction by scheduling an immediate election. *See* Brief in Support of Plaintiff's Motion to Alter or Amend, at 5. The Union waited until July, 1988 to hold an election in conformance with the March, 1988 injunction. Plaintiffs contrast this wait to the two weeks that the Union took to schedule an election following the Sixth Circuit's ruling. *See* Response to Defendants' Motion to Vacate, at

6. The Court finds that to the extent that the delay exceeded one month, the Union is subject to laches, and is unable to obtain set-off.

Therefore, the preliminary calculation of the set-off amount consists of the difference between the amount taken in by the union during the first month that the injunction was in effect: March 30, 1988—April 30, 1988 and the amount that the union would have taken in without the injunction.

This figure, when calculated, will contain inaccuracies, however, as Plaintiffs contend, *see* Plaintiffs' Response To Local 7's "Affidavit of T. Jeff Cole" at 6, because the same individuals did not necessarily belong to Local 7 in 1986 and 1988. Plaintiffs correctly note that Defendants have not shown that the same individuals who overpaid dues in 1986, and thus comprise the Plaintiff class, constituted the Local 7 membership who underpaid dues in 1988. While substantial overlap in the groups is likely, any changes undermine the case for restitution.

For instance, suppose that individuals A—R [5] constituted Local 7's membership in 1986, and thereby comprise the plaintiff class who overpaid approximately $185,000 in dues. Then suppose that individuals J—Z comprise the union's membership in 1988, during the period of the injunction. J—Z paid lower dues than they "should have"—that is, lower than they would have had the injunction not issued.

If this Court awards restitution from the plaintiff class to the union, it will provide individuals S—Z with unjust enrichment, since they benefitted from the low dues but did not suffer from the high dues. Conversely, individuals A—I will be paying restitution for no benefit received, since they did not benefit from the low dues in 1988. Finally, the entire plaintiff class, A—R, will bear the cost of the unjust enrichment obtained by S—Z. Thus, restitution would constitute a wealth transfer from members of Local 7 who worked in 1986 to members who worked in 1988.

5. That is, individuals A, B, C, ... R.

It is possible, although complicated, to remove the distortions caused by the changes in membership. However, "it is of no importance that dealing with petitioners' motion for assessment of damages would involve long and complicated hearings ..." *Brashear Freight Lines*, 312 U.S. at 629, 61 S.Ct. at 788. Thus, the Court will schedule an evidentiary hearing, which has, in any event, been requested by both attorneys, to determine the exact amount of the set-off in accordance with this opinion.

The set-off will only apply to those plaintiffs who worked during April, 1988, and the total union losses considered for set-off will be reduced to reflect the proportion of workers in that month who are members of the plaintiff class. In this way, the inequities described above can be avoided. The calculation of each plaintiff's recovery will therefore be made as follows:

(Judgment per plaintiff + Pre & Post–Judgment Interest) − Adjusted set-off = Plaintiff's Recovery.

Adjusted Set-off = Total Losses in Dues to Local 7 Caused by Injunction During April, 1988 × (# of plaintiffs who worked in April, 1988 ÷ total # of April, 1988 workers) ÷ # of plaintiffs who worked in April, 1988. Adjusted Set-off = 0 if Plaintiff did not work in April, 1988.

## II. *Interest Rates*

### A. Pre-judgment Interest Rate

■ Defendants request this court to reverse its prior finding that pre-judgment interest should be awarded. The court does not find error in its prior decision and declines to do so. This is a matter of discretion for the trial judge. *EEOC v. Wooster Brush Co. Employees Relief Assn.*, 727 F.2d 566, 579 (6th Cir.1984).

Plaintiffs suggest a rate employed by the Internal Revenue Service for late taxes. Memorandum in Support of Plaintiffs' Motion to Alter or Amend November 1, 1991 Memorandum and Order at 2 [Appendix at 864]. This rate bears no relation to the instant case. As Defendants demonstrate convincingly, pre-judgment interest is ap-

propriate solely for compensatory purposes in this case. Therefore, in accordance with the Second Circuit's judgment in *EEOC v. County of Erie,* 751 F.2d 79, 82 (2nd Cir. 1984), this Court find that compensation is best obtained by employing the rate provided by 28 U.S.C. § 1961.

### B. Post–Judgment Interest Rate

■ 28 U.S.C. § 1961 (West 1992 Supp.) applies mandatorily from the date of judgment. The date of judgment is the date of the Sixth Circuit opinion establishing the liability of the parties. Therefore, post-judgment interest is awarded pursuant to § 1961 on this amount until date of payment. With respect to Defendants' argument that interest is not warranted because of delays by this Court, that argument is unpersuasive since (1) Defendants provide no way to get around the mandatory language of § 1961 and (2) Plaintiffs have been denied use of the money for the entire time.

### III. *Attorney's Fees*

■ Local Rule 17(m) requires new arguments to justify a motion to vacate or for reconsideration. There are no new arguments raised as to whether attorney's fees should be granted;[6] however, defendants do raise valid arguments to reduce attorney's fees. The defendants correctly distinguish the plaintiffs' successful challenge to the original dues rate from the plaintiffs' second claim that the constitutional minimum should apply until a meeting was held at which any member had the opportunity to move for the adoption of any dues rate. After the June 1986 election, which this Court held invalid but which was found to be valid by the Sixth Circuit:

> It was the maintenance by plaintiffs of their claim that all changes in dues rates *after* July 1, 1986 were illegal, and their further claim that no dues could be charged above the threshold of the constitutional minimum unless an election of the nature described above was held that prolonged the course of this litigation.

Brief in Support of Defendants' Motion to Vacate, at 9; *see also* Supplemental Memorandum in Support of Motion to Vacate. Since the plaintiffs ultimately lost on the latter issue, they should not recover attorney's fees that were incurred in the losing effort.

The plaintiffs' response provides a different view of the proceedings in this case. The plaintiffs' claim was dismissed by the Court in May, 1986 in anticipation of an election in June. The potential for reinstatement was offered if the election did not turn out as plaintiffs had hoped. The plaintiffs ultimately took advantage of the reinstatement and succeeded in this Court.

In the November 1, 1991 Memorandum Opinion and Order, the same argument was made, and this Court concluded "that the plaintiffs' challenge to the dues structure was focused on the Union's refusal to act in a democratic fashion as required by the LMRDA." November 1, 1991 Memorandum Opinion and Order, at 8 [Appendix at 864].

While the question is a close one, and both perspectives carry some weight, on reconsideration, I think it necessary to reduce attorney fees by twenty-five percent to account for the Sixth Circuit's decision to find for the Defendants on count two. *See* Reply of Sheet Metal Workers' International Association, AFL–CIO To Plaintiffs' Response To Local 7's Affidavit of T. Jeff Cole, at 2 n. 1. The Court's change of position on the set-off issue also warrants a reexamination of the attorney's fees question.

The reduction should only be for twenty-five percent, however, and not based on the billings attributed to particular counts because Plaintiffs have won the greater part of what they set out to do in filing this complaint. It was not obvious to either party or to this court which counts the Sixth Circuit would ultimately decide would be meritorious; this case involves questions of first impression. Hence, it would be unjust to reduce plaintiffs' attorney fees by more than twenty-five percent.

---

**6.** Defendant's argument raised in his September, 1992 supplemental pleading is without merit.

## IV. *Election By Local*

█ Defendant's motion to have the members of Local 7 decide the outcome of this case is wholly inappropriate in this matter. The cases that he cites discussed the authority by which a district court *may* order such an election. *See, e.g., Sertic v. Cuyahoga, Lake, Geauga and Ashtabula Counties Carpenters District Council of the United Brotherhood of Carpenters And Joiners of America,* 423 F.2d 515, 522 (6th Cir.1970). However, none of defendant's cases requires that a court mandate such an election. In this case, where there are two defendants, Local 7 and the International, and where the membership of the Local has changed over time, there is no basis for subjecting the rights of the plaintiff's class to the will of the current majority of the membership of Local 7.

Plaintiffs have waited since 1986 to receive what was wrongfully taken from them; they shall not be denied their receipts because the current members of Local 7 may not wish to pay them. Since the Court bases this decision on its discretion of the equities, it need not address Plaintiff's constitutional challenge to Defendant's motion.

## V. *Distribution Procedures*

█ Plaintiffs have shown no compelling reason why they should obtain security from the International, nor why the Defendants should bear the cost of administering the payout of the award. However, the union must provide all relevant payroll and dues information in "user friendly" form, such as data on a computer disk, to allow plaintiffs' counsel to perform the task at minimal cost. It appears reasonable that the union should bear the cost of providing the information in easily accessible form because it is Local 7 which has easiest access to the information. *Brief of Sheet Metal Workers' International Association, AFL–CIO Local Union No. 7, Sheet Metal Workers' International Association,* filed June 18, 1991 at 2. The union should also provide current known addresses of all members of the Plaintiffs class in user friendly form to plaintiff' counsel, such as on a disk in a "mail merge" software program. Plaintiffs must bear the burden of analyzing the data to determine the appropriate award and of notice and mailing to the class members.

SO ORDERED.

## APPENDIX

### UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION—FLINT

Donald Dornan, et al., Plaintiffs,

v.

Sheet Metal Workers' International Assn., et al., Defendants.

Civil Action No: 86–CV–40127–FL

### MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Pending before the Court are briefs filed by the parties on the issues of damages, pre-judgment interest and attorney's fees. The parties were unable to reach agreement on these issues, and have submitted their dispute for this Court's determination.

### I.

This matter is on remand from the Sixth Circuit. The Court of Appeals upheld this Court's finding that the defendant Union had violated § 411(a)(3)(A) of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* (LMRDA), when, following consolidation of several locals into one local union, the Union set a dues rate without first holding an election that complied with the requirements of § 411(a)(3)(A). The appeals court differed with this Court's determination of the proper dues rate to be applied until a valid rate could be established by an election, and thus changed the methodology for determining damages.

This Court had determined that until a valid dues election was held, the dues rate could not exceed the union's constitutional minimum, which was the equivalent of two

hours' pay. Thus, damages would equal the difference between the rate invalidly charged by the union and the constitutional minimum, from the time of consolidation until such time as a valid dues rate was established through an election that complied with the LMRDA. The Court also invalidated the dues election held on June 11, 1986, finding that the election procedures were still inconsistent with statutory requirements.

The Court of Appeals held, however, that the dues rates in existence prior to the consolidation were valid, and that the June 11, 1986 election was valid under the LMRDA. Thus, damages should be calculated from the time of consolidation until June 11, 1986, and should equal the difference between the dues rate invalidly charged following the consolidation and the dues rates in existence prior to the consolidation.

The parties have agreed that the damages under the appeals court's methodology equals approximately $195,000. The parties are unable to agree on the following issues: 1) whether there should be a set-off from the damage calculation equal to the amount of dues the Union lost as a result of the erroneous decisions of this Court; 2) whether the plaintiffs' class is entitled to collect pre-judgment interest; and 3) whether the plaintiffs' class should collect attorney's fees. The parties have submitted briefs in support of their respective positions.

## II.

The Union argues for a set-off based on the equitable doctrine of restitution. Because the Court's injunction was determined on appeal to be erroneous, the Union should recover the money lost as a result of the enforcement of the injunction. The Union argues that the Court's decisions "intimidated" the Union into adopting reduced dues rates, which depleted the Union's treasury and forced lay-offs and a reduction in union services. The Court is unconvinced for three reasons.

Although the Union received less in dues, the services it provided were correspondingly reduced. The plaintiffs' class may have enjoyed reduced dues payments, but as the plaintiffs' brief states, "if the union's operations were scaled back during the period commensurate with its reduced dues revenues, then payment of the reduced rate in that period meant that the members were getting what they paid for, and nothing more." Plaintiffs' Memorandum Respecting Unresolved Issues, at 12. The failure to award restitution will not result in unjust enrichment of the plaintiffs; rather, the Union would be unjustly enriched if it now received the money it did not have to spend before.

The Union never obtained or sought a supersedeas bond to stay the effects of the injunction. In *Caldwell v. Puget Sound Elec. Apprentice & Training Trust*, 824 F.2d 765 (9th Cir.1987), the defendants sought restitution based on the theory of unjust enrichment, and were therefore entitled to restitution even in the absence of a bond. As discussed above, restitution in the case at bar would unjustly enrich the Union. *Caldwell* is distinguishable, therefore. The clear rule is that the absence of a supersedeas bond defeats the defendant's claim for restitution. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

Finally, at all times that the injunction operated to reduce the dues rate, the Union held the keys to their cell of financial woes. To avoid the depletion of its treasury, an election consistent with the provisions of the LMRDA could have been held to adopt a valid dues rate. The Court will not punish the plaintiffs for their union's delay. No amount will be set-off from the plaintiffs' class' recovery.

## III.

The Union asks the Court to use its discretion and refuse to award pre-judgment interest. Once again, the Union refers to the pauperization of its treasury at the hands of the plaintiffs' class, and states that the request for interest "is the ultimate in effrontery." As discussed above,

any "plundering" could have been alleviated by the Union by the staging of an election consistent with the requirements of the LMRDA.

The plaintiffs cite two cases from the National Labor Relations Board, and argue that the Board uniformly awards pre-judgment interest in cases in which union dues have been wrongfully exacted. *Seafarers Int'l Union*, 138 NLRB 1142, n. 3, 51 LRRM 1208 (1962); *Isis Plumbing & Heating Co.*, 138 NLRB 716, 51 LRRM 1122 (1962). The Board analogizes the amounts withheld to a debt, instead of to a fine or penalty, and therefore "an equity interest is allowed as a means of compensating a creditor for loss of use of his money." *Seafarers Int'l, supra*, at 718. Plaintiffs also cite Sixth Circuit cases permitting the award of interest in backpay, minimum and overtime wage, and benefit recovery cases. *Equal Employment Opportunity Comm'n v. Wooster Brush Co. Employees' Relief Ass'n*, 727 F.2d 566 (6th Cir. 1984) (Title VII backpay and benefits); *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988 (6th Cir.1982) (retirement benefits under ERISA); *McClanahan v. Mathews*, 440 F.2d 320, 325 (6th Cir.1971) (back-pay and minimum wages); *Phillip Carey Mfg. Co. v. NLRB*, 331 F.2d 720, 729–31 (6th Cir.1964) (back-pay).

Neither party disputes that the award of pre-judgment interest in this case is discretionary. *See* Plaintiffs' Memorandum, at 6; Defendant's Brief, at 13. In *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3, 6 (1947) the Supreme Court held that pre-judgment interest could be awarded, even though the statute did not expressly so provide, if such an award would be consistent with the congressional purpose in imposing the statutory obligations. Interest has been awarded in LMRDA cases, *Rosario v. Dolgen*, 99 L.R.R.M. (BNA) 2723, 85 Lab.Cas. P 11029, 1978 WL 1728 (S.D.N.Y.1978), *Gravenstein v. Campion*, 96 F.R.D. 137 (D.Alaska 1982), and the Supreme Court interpreted § 102 broadly to permit courts to fashion appropriate relief to fit the facts of the

cases before them. *Hall v. Cole*, 412 U.S. 1, 10–11, 93 S.Ct. 1943, 1949, 36 L.Ed.2d 702, 710–11 (1973).

I conclude, therefore, that I have the discretion to award pre-judgment interest in this case. The defendant has had the benefit of the use of the money wrongfully collected from the plaintiffs. The plaintiffs are entitled to that benefit, so the Court will order the defendant to pay pre-judgment interest to the plaintiffs' class.

## IV.

Two issues are presented in the parties' briefs concerning attorney's fees: whether fees should be awarded at all, and whether all the attorney's fees incurred in this case should be awarded.

## A.

Both parties agree that § 102 does not provide for the award of attorney's fees, and that such fees can be recovered by the plaintiffs only if this case fits within the "common benefit" exception to the American Rule on attorney's fees. *Hall v. Cole, supra; Shimman v. International Union of Operating Engineers*, 744 F.2d 1226 (6th Cir.1984). The defendant argues, however, that the fund shared by the plaintiffs' class derived no benefit from this litigation, and in fact suffered "devastating unnecessary economic losses." Defendant's brief, at 20.

The Union seeks to distinguish unemployed union members from the rest of the plaintiffs' class. The unemployed members benefitted from the dues structure that was invalidated by this Court at the behest of the plaintiffs. The unemployed members did not have to pay the "working dues" rate, and thus paid less in dues than the rest of their employed colleagues. The unemployed members were harmed, then, when the dues structure was struck-down. They derived no benefit, and according to the Union, the "common benefit" exception, therefore, cannot apply.

The Union's perspective is myopic. Perhaps the fund to which the members of the plaintiffs' class contribute suffered financially, and perhaps the unemployed mem-

bers of the union lost the benefit of the discriminating "working dues" structure. What *all* members of the plaintiffs' class obtained from this litigation is the vindication of their rights to democratic control of their union. Although the unemployed members presently do not enjoy the benefits of the "working dues" structure, they have the right to seek that structure's reenactment.

I conclude that the plaintiff's class has derived a common benefit from this litigation, and that an award of attorney's fees is appropriate, therefore.

### B.

The defendant seeks to limit the award of attorney's fees to those fees and costs incurred in litigating only those issues on which the plaintiffs' class can be said to have prevailed. The Union looks to *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a civil rights case in which the Supreme Court held "That the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Id.* at 440, 103 S.Ct. at 1943, 76 L.Ed.2d at 54–55.

The defendant emphasized with italics the passage quoted above, and obviously found less interesting the next sentence. "Where the plaintiff has failed to prevail on a claim that is *distinct in all respects* from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* (emphasis added). In addition, the *Hensley* case appears to be concerned with civil rights cases which tend to be complex, and involve "numerous challenges to institutional practices or conditions." *Id.* at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. "That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.*

The defendant points to several decisions made by this Court in this case which were reversed by the Court of Appeals. They involved two dues rates which this Court erroneously invalidated based on my finding that the requirements of the LMRDA were not fulfilled, and the establishment of the constitutional minimum as the only dues rate that could be charged until a valid election was held. Defendant's Brief, at 23. The defendant would have the Court believe that "Plaintiffs' 'success' in this litigation is, to put the matter charitably, in the low range." *Id.* at 25.

I simply do not agree. The plaintiffs successfully established that the dues rate imposed after the consolidation was invalid, and that the Union collected almost $195,-000 in excess dues. There were no numerous challenges involved here. Rather, I find that the plaintiffs' challenge to the dues structure was focused on the Union's refusal to act in a democratic fashion as required by the LMRDA. I conclude that the attorney's fees incurred by the plaintiffs in asserting their rights in this case are all interrelated, and not "distinct in all respects." The defendant's attempt to distinguish those costs incurred in challenging certain dues elections must fail. All of the plaintiffs' fees reasonably incurred in prosecuting this action are recoverable.

### CONCLUSION

The plaintiffs' class is entitled to recover all of the nearly $195,000 in excess dues that the parties have determined was wrongfully collected under the Sixth Circuit's opinion. There will be no set-off. The plaintiffs' class is entitled to pre-judgment interest, and all of the attorney's fees reasonably incurred in prosecuting this action.

SO ORDERED.

Date: 11/1/91